UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RAYMOND JAMES & ASSOCIATES, INC.,

                      Plaintiff,

       v.

WILLIAM JAMES ELLISON, JULIAN
BROWN, SHIRLEY BROWN, JACK
BROWN, MICHAEL BROWN, SCOTT
BROWN, PRECIOUS BROWN,
CHASTITY GREENE, and WILLIE
JAMES ELLISON,

                    Defendants.

_____

**DECISION AND ORDER**

6:23-CV-06497 EAW

## BACKGROUND

Plaintiff Raymond James & Associates, Inc. ("Raymond James"), a financial services firm, commenced this interpleader action pursuant to 28 U.S.C. § 1335. (Dkt. 1). The action relates to two Individual Retirement Accounts (the "Accounts") with Raymond James owned by Gayla Ellison ("Decedent") at the time of her death in May 2021. (*See id.* at ¶¶ 2, 15, 27).

Decedent opened the Accounts in May 2018. (Dkt. 28-2 at ¶ 3). She did not designate a beneficiary at that time. (*Id.* at ¶ 5). Under Raymond James' Traditional And Roth Individual Retirement Custodial Account Agreement, where no beneficiary has been designated at the time of a depositor's death, "the Beneficiary of the Depositor's Custodial Account shall be deemed to be the Depositor's surviving spouse, if married and if not

- 1 -

married, the Beneficiary shall be deemed to be the Depositor's estate." (*Id*. at ¶ 6 (citation omitted)).

On June 15, 2020, Raymond James received an IRA Beneficiary Designation/Change Form for one of the Accounts (the "Beneficiary Form"). (*Id*. at ¶ 7). The Beneficiary form had been executed on October 5, 2018, approximately 20 months earlier. (*Id*. at ¶ 8). The Beneficiary Form identified five primary beneficiaries: Julian Brown, Mike Brown, Jack Brown, Precious Brown, and Chastity Greene. (*Id*. at ¶ 9). The Beneficiary Form was not fully completed: it lacked Social Security numbers for all the beneficiaries except Julian Brown, it lacked a birth year for Mike Brown, and Julian Brown's allocation percentage had been changed. (*Id*.).

The Beneficiary Form also listed three contingent beneficiaries: Julian Brown (who was also listed as a primary beneficiary); Shirley Wells; and Scott Brown. (*Id*. at ¶ 10). No allocation percentages were included for any of these contingent beneficiaries, "and Shirley Wells' and Scott Brown's names are handwritten below empty boxes[.]" (*Id*.). There were also no Social Security numbers or birthdates provided for Shirley Wells and Scott Brown. (*Id*.).

The Beneficiary Form contained a spousal consent section, which was executed by Decedent's husband, Willie James Ellison, Jr. ("Willie Ellison"), on November 7, 2018. (*Id*. at ¶ 11).

- 2 -

Raymond James advised Decedent that it had rejected the Beneficiary Form, "because that form was outdated and, by June 2020, Raymond James used an updated version of the form." (*Id*. at ¶¶ 12-13). "Raymond James received no additional beneficiary designation documentation from Decedent after the Beneficiary Form." (*Id*. at ¶ 14).

Decedent died on May 19, 2021. (*Id*. at ¶ 15). She was survived by her husband, Willie Ellison. (*Id*. at ¶ 16). At the time of Decedent's death, the Accounts were valued at approximately $480,000. (Dkt. 34-2). To date, the Accounts remain under management through Raymond James' Rochester, New York office. (Dkt. 28-2 at ¶ 18). As of January 31, 2024, the value of the Accounts was approximately $493,000. (Dkt. 34-3).

After Decedent's death, Willie Ellison "filed a Petition for Letters of Administration for Decedent's Estate in New York Surrogate's Court in Ontario County[.]" (Dkt. 28-2 at ¶ 19). He "represented that he was the only person with an interest in the proceeding." (*Id*.).

On July 13, 2021, counsel for Michael Brown, Jack Brown, Scott Brown, and Shirley Wells wrote a letter to Raymond James' Rochester office regarding the Accounts, stating that it was "their understanding that [Decedent] completed the paperwork to name them as beneficiaries on the account but that your company is not accepting this paperwork." (*Id*. at ¶ 21 (alteration in original)).

- 3 -

In November 2022, Julian Brown took legal action in the Surrogate's Court proceeding to require Raymond James and Decedent's estate to produce documents related to the Accounts, including any beneficiary designation forms.  (*Id*. at ¶ 22).  Julian Brown has taken the position that he "has a claim to certain assets of the Estate of Gayla M. Ellison, as follows: as a beneficiary of the retirement account(s) of Decedent Gayla M. Ellison, maintained by Raymond James & Associates, Inc."  (*Id*. at ¶ 25 (alteration and citation omitted)).  "Since Decedent's death, Shirley Wells and Precious Brown have also contacted Raymond James regarding the Accounts."  (*Id*. at ¶ 26).

Raymond James filed its complaint for interpleader on August 28, 2023.  (Dkt. 1).  Mike Brown, Scott Brown, Shirley Wells, Chastity Greene, and Jack Brown have been served but have not appeared, and their time to respond to the complaint has expired.  (*See* Dkt. 28-2 at ¶¶ 28-31, 33).  Willie Ellison, Julian Brown, and Precious Brown have appeared and filed answers.  (*See* Dkt. 23; Dkt. 25).

Raymond James moved for interpleader deposit on January 23, 2024.  (Dkt. 28).  In its motion, Raymond James seeks the following: (1) that the Court order that the action proceed as an action in interpleader; (2) that the Court order Raymond James to secure a bond in the amount of $1,000, payable to the Clerk of Court, United States District Court for the Western District of New York; (3) that Raymond James be "adjudicated as not liable to any of the Defendants with respect to the Accounts except to abide by any settlement reached between the parties or final adjudication of this action directing Raymond James

as to what action it should take with respect to the Accounts"; (4) that the Court "fully and finally" discharge Raymond James from any further liability with respect to the Accounts and dismiss it from this action; (5) that "Defendants, their agents, attorneys, and/or representatives, be permanently enjoined from instituting or prosecuting any proceeding in any jurisdiction against Raymond James on the basis of the Accounts or their respective claims thereto"; (6) that Raymond James be "awarded its attorneys' fees and costs incurred in bringing this interpleader action, to be further determined after the adjudication of the merits of this action and upon declaration by Raymond James' counsel of the fees and costs incurred by Raymond James"; and (7) for such other relief as the Court finds warranted. (Dkt. 28 at 1-2).

Willie Ellison has not opposed Raymond James' motion, but Julian Brown and Precious Brown (hereinafter "Objecting Defendants") have.  (Dkt. 32).  In particular, Objecting Defendants argue: (1) the Court should not allow Raymond James to keep possession of the Accounts with payment of a nominal bond of $1,000, but should instead "direct that Raymond James divest itself of the IRA and that its funds be deposited in an investment account with a third-party investment agency and that said account be jointly selected and managed by the defendants who have appeared in this action"; (2) the Court should not discharge Raymond James from liability or dismiss the action as to Raymond James; and (3) the Court should deny Raymond James' request for attorneys' fees and costs.  (*Id*. at 10-14).  Objecting Defendants' arguments are based on their contention that

Raymond James "is at the core of this dispute" because it "intentionally denied the existence of a beneficiary designation it knew existed, and then refused to produce it until forced to do so by a subpoena in the underlying state court proceeding before the Ontario County Surrogate's Court." (Dkt. 32 at 4). Objecting Defendants assert that these actions of "delay, concealment, and denial" have allowed Raymond James to "unlawfully retain[]" possession of the funds in the retirement account "for the apparent purpose of enriching itself off the management of those funds." (*Id.*).

For the reasons that follow, the Court denies Raymond James' motion without prejudice.

## **DISCUSSION**

### I.    **Legal Standard**

Pursuant to 28 U.S.C. § 1335(a), a federal district court has "original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more" if "(1) [t]wo or more adverse claimants, of diverse citizenship . . ., are claiming or may claim to be entitled to such money or property" and "(2) the plaintiff has deposited such money or property . . . into the registry of the court . . . or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the

controversy." *Id.*; *see also Metal Transp. Corp. v. Pac. Venture S. S. Corp.*, 288 F.2d 363, 365 (2d Cir. 1961) ("As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants."); *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 359 (S.D.N.Y. 2008) ("The federal interpleader statute grants district courts original jurisdiction over actions of interpleader or in the nature of interpleader where a plaintiff stakeholder has in its possession money or property worth $500 or more that is or may be the subject of adverse claims by two or more claimants of diverse citizenship.").

"Interpleader actions usually unfold in two stages. First, the court determines whether interpleader jurisdiction exists and, if it does, discharges the stakeholder from the action. The court then adjudicates the defendants' competing claims." *Id.* (citations omitted). "The appropriateness of an interpleader action rests on whether the plaintiff has a real and reasonable fear of double liability or vexatious, conflicting claims against the single fund, regardless of the merits of the competing claims." *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013) (quotations and citations omitted). "[T]he interpleader statute is remedial and to be liberally construed, particularly to prevent races to judgment and the unfairness of multiple and potentially conflicting obligations." *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 151 (2d Cir. 2016) (quotation omitted).

## II.   **Interpleader Jurisdiction**

Before considering the Objection Plaintiffs' opposition, the Court has an obligation to assure itself that interpleader jurisdiction exists.  As set forth above, payment of a deposit or bond is a jurisdictional requirement under § 1335(a): "without a deposit or bond, the Court does not have subject matter jurisdiction and thus has no authority to hear the dispute."  *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 485 (E.D.N.Y. 2019).[1]  "The structure of statutory interpleader is intended to relieve the stakeholder of its responsibility, and the deposit requirement ensures that is possible."  *Id*. at 485-86.  The Court cannot proceed on the relief requested by Raymond James until the deposit requirement has been satisfied.

Raymond James requests that it be permitted to satisfy the deposit requirement by securing a bond for the nominal amount of $1,000.  (Dkt. 28-1 at 11).  In support of its contention that a nominal bond is appropriate, Raymond James cites two unreported cases from the District of South Carolina, in one of which it was the plaintiff.  (*See id*. (citing *Raymond James & Assocs., Inc. v. Bassford*, No. 2:21-CV-01825-DCN, 2022 WL 673833,

---

[1]      "It is established practice . . . to give the party asserting interpleader jurisdiction over contested funds an opportunity to deposit those funds prior to dismissing the action because deposit has been construed as a requirement of maintaining interpleader jurisdiction, rather than a prerequisite to bringing suit." *Doe v. Ejercito De Liberacion Nacional*, No. 15 CV 8652-LTS, 2015 WL 9077344, at *3 (S.D.N.Y. Dec. 16, 2015) (quotation omitted), *modified in part*, No. 15 CV 8652-LTS, 2016 WL 1073100 (S.D.N.Y. Mar. 10, 2016).

at *3 (D.S.C. Mar. 7, 2022) and *UBS Fin. Servs., Inc. v. Banco Popular de Puerto Rico*,
No. CV 6:17-00607-MGL, 2017 WL 3500055, at *4 (D.S.C. Aug. 16, 2017))).  But this
out-of-Circuit case law is unpersuasive.  In *Bassford*, the court held that "[c]ourts have
previously granted interpleader based on a nominal bond when the assets in controversy
were held in investment accounts."  2022 WL 673833, at *3.  The only case cited by the
*Bassford* court for this proposition was *UBS*.  But in *UBS*, the plaintiff was subject to a
preliminary injunction, and the court still <u>denied</u> the plaintiff's request that it be required
to secure only a nominal bond.  *See UBS*, 2017 WL 3500055, at *4 ("The Court holds a
bond in the amount of $10,000 conditioned upon Plaintiff's compliance with any present
or future order of the Court in this matter is sufficient to protect the interests of BPPR and
to invoke interpleader jurisdiction under § 1335.  <u>Such a bond constitutes more than a
nominal bond</u>, but a bond in a greater amount is unnecessary in light of the obligations the
Agreed Preliminary Injunction Order imposes upon Plaintiff." (emphasis added)).  These
cases are not persuasive authority that Raymond James should be permitted to post a
nominal bond.

In its reply, Raymond James cites an unreported case from the Southern District of
Ohio, *UBS Financial Services, Inc. v. Ulrick*, et al., No. 18-cv-178 (S.D. Ohio 2018), in
which "a federal court permitted a financial services company to interplead a nominal bond
of $1 when the IRA account at issue was valued at over $400,000 at the time of the
decedent's death."  (Dkt. 34 at 8).  But the order entered in the *Ulrick* case contains no

analysis at all of the propriety of a nominal bond (*see* Dkt. 34-6), and is accordingly of no persuasive value.

Further, the Court's own research has uncovered no cases in the Second Circuit where a court has permitted a party to satisfy the deposit requirement by posting a nominal bond. To the contrary, some courts in this Circuit have held that it is necessary to post a bond for the highest amount that may be in dispute. *See, e.g.*, *Coopers & Lybrand, L.L.P. v. Michaels*, No. 94-CV-5643 (RJD), 1995 WL 860760, at *9 (E.D.N.Y. Oct. 31, 1995); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Grp., Inc.*, 691 F. Supp. 618, 621 (E.D.N.Y. 1988); *see also Deutsche Bank Tr. Co. Americas v. Am. Gen. Life Ins. Co.*, No. 1:15-CV-3869-GHW, 2015 WL 5178408, at *4 (S.D.N.Y. Sept. 4, 2015) ("As a general rule, 28 U.S.C. § 1335 requires that a plaintiff deposit or post a bond in an amount equal to the largest claim.").

Under § 1335(a), the Court has discretion to determine the amount of the bond that must be posted. *Hapag-Lloyd*, 814 F.3d at 153 n.19 (finding no abuse of discretion in district court's determination that bonds exceeding the costs of the invoices at issue were sufficient). Raymond James has not persuaded the Court that allowing it to post only a nominal bond would satisfy the purposes of the deposit requirement. Accordingly, the Court cannot grant the relief sought by Raymond James.

The Court further finds that Objecting Plaintiffs' suggestion—that Raymond James be required to deposit the funds currently in the Accounts into an investment account with

a third-party investment agency (*see* Dkt. 32 at 10)—would not satisfy the jurisdictional requirements of § 1335(a).  The interpleader statute is clear—to invoke the Court's jurisdiction, Raymond James must either deposit the funds into the registry of the Court or post an appropriate bond.  This Court lacks authority to expand its jurisdiction beyond that granted by the statute.[2]

The Court will permit Raymond James to submit a renewed motion for interpleader deposit within 30 days of entry of this Decision and Order.  If Raymond James seeks to post a bond in its renewed motion, it must set forth in detail the reasons why the amount of the proposed bond is adequate to satisfy the purposes of the deposit requirement.  In the event that Raymond James fails to submit a renewed motion for interpleader deposit, the Court will dismiss this action for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Raymond James' motion for interpleader deposit (Dkt. 28) is denied without prejudice.  Any renewed motion must be filed within 30 days of entry of this Decision and Order.  If no renewed motion is filed, the matter will be dismissed without prejudice for lack of subject matter jurisdiction.

---

[2]     *Citigroup Glob. Markets, Inc. v. KLCC Invs., LLC*, No. 06 CIV. 5466 (LBS), 2007 WL 102128 (S.D.N.Y. Jan. 11, 2007), which Objecting Defendants cite in support of their proposal, is inapposite.  In *Citigroup*, the property at issue had a "volatile and unique nature" that meant that "liquidating it and paying the proceeds into the registry of the court would result in significant losses."  *Id*. at *7.  No comparable facts are present here. Further, the court in *Citigroup* ordered the parties to "submit a proposed order for how the property should be managed and <u>deposited with the Court</u>."  *Id*. (emphasis added).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  August 29, 2024
        Rochester, New York